T.C. Summary Opinion 2002-5

UNITED STATES TAX COURT

FRANK DE BANÉ AND KATHLEEN NABER-DE BANÉ, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5200-00S.                Filed January 22, 2002.

Frank de Bané, pro se.

Jeremy L. McPherson, for respondent.

DINAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioners' Federal income tax of $5,277 for the taxable year 1996. The sole issue for decision is whether petitioners are entitled to numerous business expense deductions disallowed by respondent.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Ukiah, California, on the date the petition was filed in this case.

During taxable year 1996, petitioners had combined wage and salary income of $67,571. Petitioner husband (petitioner) was employed full time as a professor of physics and astronomy at Mendocino College and part time as a professor of astronomy at Santa Rosa Junior College. Petitioner wife was employed full time as a crisis counselor at Jefferson Elementary School in Cloverdale, California.

Petitioners filed a joint Federal income tax return for taxable year 1996. They filed with the return a Schedule C, Profit or Loss From Business. The schedule listed petitioner as

---

[1]Respondent's adjustments to petitioners' itemized deductions, self-mployment income tax, and self-employment income tax deduction are computational and will be resolved by our holding on the issue in this case. We note that respondent previously corrected two mathematical or clerical errors with respect to petitioners' itemized deductions. The increase in the tax shown on the return resulting from this correction has been assessed and paid and is not at issue in this case.

the proprietor of a business called "Schools and Universities Research Center" which was engaged in the business of "Education Research and Publication." Petitioners reported $1,875 in gross receipts, and claimed the following deductions for expenses:

| | |
|---|---:|
| Advertising | $140 |
| Bad debts from sales or services | 15 |
| Car and truck | 730[1] |
| Commissions and fees | 340 |
| Depreciation and sec. 179 expense | 5,682[2] |
| Insurance | 1,082 |
| Interest (other than mortgage) | 155 |
| Legal and professional services | 192 |
| Office | 460 |
| Rent or lease of business property | 62 |
| Repairs and maintenance | 390 |
| Supplies | 175 |
| Taxes and licenses | 324 |
| Travel | 1,670 |
| Meals and entertainment | 227 |
| Utilities | 620 |
| Wages | 5,388 |
| | 17,652 |

[1]On the Schedule C, petitioners reported business mileage of 19,900, commuting mileage of 1,500, and other mileage of 4,400.

[2]This deduction is related to the use of a computer and a Ford Ranger. Petitioners claimed 85 percent business usage with respect to both items. Here, with respect to the Ford Ranger, petitioners reported business mileage of 19,900, commuting mileage of 1,500, and other mileage of 2,000.

In the statutory notice of deficiency, respondent disallowed each of these deductions in full and increased petitioners' income by an additional $3 to correct a mathematical error petitioners made in totaling the expenses.

Ordinary and necessary business expenses generally are deductible in the taxable year in which they are paid. Sec. 162(a). An ordinary expense is one that relates to a transaction "of common or frequent occurrence in the type of business

involved", Deputy v. du Pont, 308 U.S. 488, 495 (1940), and a necessary expense is one that is "appropriate and helpful" for "the development of the petitioner's business," Welch v. Helvering, 290 U.S. 111, 113 (1933). Personal, family, and living expenses, on the other hand, generally are not deductible. Sec. 262(a).

First, we are not convinced that petitioner was engaged in a trade or business in the year in issue. The primary evidence that petitioner was engaged in any business at all is petitioner's brief and conclusory testimony. The testimony was unclear, but it seems that petitioner's contention is that the Schedule C was filed not for one business, but for two--an antique clock business which was not identified on the return in addition to the research and publication business which was identified. At one point, however, petitioner testified that the antique clock business was "dead" and that none of the gross income on the Schedule C was for that business. As for the $1,875 of income that was reported, he could not provide sufficient details concerning its source. He testified that this amount was the income he received from activity such as reviewing manuscripts and selling textbooks, but could not name the publishing companies from which the income was received. The only other evidence which indicates the existence of a business consists of checks drawn on two bank accounts. The accounts each

identified petitioner as the proprietor of a business, one named "G.F. de Bané Publishing" and the other "Grandfather Time Antique Clocks". The checks were written for a variety of expenses, including mortgage, telephone, water, waste, credit card, insurance, department of motor vehicles, and taxes. Both accounts were used alternately for some of the same payees. It appears that these were used by petitioners as nothing more than personal banking accounts. Neither the existence of these accounts nor petitioner's testimony establishes the existence of any business.

Even if the record established the existence of a trade or business, it does not show that the deductions claimed were for ordinary and necessary business expenses. In addition to the checks mentioned above, petitioners provided credit card statements to substantiate the expenses. Notations were made beside some of the charges, and petitioners, in preparation for trial, summarized some of the charges and checks as belonging to certain categories of expenses. From the evidence before the Court, it appears that, for the most part, petitioner simply scoured the credit card statements and canceled checks in search of expenses which could be matched to the amounts on the returns. For example, with respect to the bad debt expenses of $15, petitioner testified that: "I find when I was examining all of the receipts that I have from the charge card, from the two

accounts, I could not find $15 which could qualify for a bad debt and I do not have recollection of why I put $15 on that tax return." With respect to the advertising expenses of $140, the summary lists charges of $5.90 at Kmart, $122.13 at Home Depot, $5.94 at Wal-Mart, and $5.94 at Raley's. Petitioner could not explain how these charges were related to advertising, even though he prepared the summary listing them as such in preparation for trial. Similarly, with respect to the commission and fee expenses, the summary lists charges made at Chevron, Scandinavian Design (for furniture), Wal-Mart, Student Book Exchange, and Jo-Ann Fabrics, along with the annual credit card fee of $100.

Finally, certain amounts reported by petitioners on the return raise suspicion. For example, petitioners reported exactly 85 percent business and 15 percent personal use with respect to both the Ford Ranger and the computer. Petitioners also reported bad debt expenses of $15 and business property rental expenses of $62. All of these amounts seem to have been arbitrarily selected by petitioners when filing their tax return.

Petitioners argue that IRS employees had possession of their "tax receipts" and refused to return them. They provide no reliable evidentiary support for this contention. In letters petitioner sent to the IRS in late 1999 and early 2000, he referred to the existence of missing records which had been given

to the IRS in 1997.  However, an earlier letter, sent in 1998, made no mention of missing records but stated petitioner would "come forward with all requested documents and other business records" upon audit of his return.

Based on the record, we cannot find that any of the expenses listed on the return were ordinary and necessary in carrying on a trade or business.  We therefore sustain respondent's disallowance of the business expense deductions.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.